IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE CITY OF SACHSE, TEXAS,     Plaintiff, | § § § | |
| v. | § § | Case No. 4:07-cv-269 |
| KANSAS CITY SOUTHERN, d/b/a KANSAS CITY SOUTHERN RAILWAY COMPANY,     Defendant. | § § § § § | |

**MEMORANDUM OPINION AND ORDER GRANTING
<u>PLAINTIFF'S MOTION TO REMAND</u>**

**I.  BACKGROUND**

This lawsuit involves a dispute over the condemnation of certain of Kansas City Southern's ("KCS") property by the City of Sachse ("Sachse") so that a railroad grade crossing may be constructed by the city.  Sachse determined, through its City Council, that a public necessity warranted the extension of Woodbridge Parkway across State Highway 78 which is adjacent, and runs parallel, to KCS's rail line in Sachse. (Pl.'s Mot. to Remand 1.)  The project calls for a railroad-grade crossing over the KCS line.  After the parties were unable to come to an agreement on the fair market value of the land to be condemned, Sachse commenced the instant action in the County Court at Law No.2 of Collin County, Texas.  (*Id.*)  Before being served with process in that action, KCS removed the matter, stating that this court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331 and 1332.  (*Id.*)  Sachse timely filed its Motion to Remand.

**II.  LEGAL STANDARD**

The general federal removal statute allows for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C.

§ 1441(a) (2006). Any action over which the district courts have original jurisdiction based upon a claim under federal law may be removed without regard to the citizenship of the parties. *See Preston v. Tenet Healthsystems Mem. Med. Ctr., Inc.*, 485 F.3d 804, 809-10 (5th Cir. 2007). Because the effect of removal is to deprive state courts of jurisdiction, federal removal statutes are to be strictly construed, and "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

The question of whether federal question jurisdiction exists is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only if a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Proof of the existence of federal question jurisdiction rests on the removing party. *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005). Because the plaintiff is the "master of the claim," he or she may bring or avoid bringing federal claims. *Id*. Thus, a plaintiff may rely solely on state law to avoid federal question jurisdiction. *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986).[1]

Three exceptions to the well-pleaded complaint rule exist. *Halfmann v. USAG Ins. Servs., Inc.*, 118 F. Supp. 2d 714, 717 (N.D. Tex. 2000). First, a state law claim may be totally preempted by federal law. *Id*. If complete preemption exists, removal is proper. *Id*. at 718. Second, removal is proper if a plaintiff's complaint includes or involves a substantial question of federal law. *Id*. at 721. Incidental federal issues, however, are insufficient. *Id*. Third, under the artful pleading doctrine, removal is proper if a plaintiff attempts in bad faith to disguise a federal claim as a state

---

[1] Thus, the defendant may not remove a case to federal court on the basis of a federal claim that the plaintiff could have asserted or on the basis of a federal defense that the defendant might assert. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998).

claim. *Id*. at 722. Moreover, the court has an affirmative duty to raise the issues regarding subject matter jurisdiction, *sua sponte*, whenever a problem with subject matter jurisdiction is perceived. *Dominguez-Cota v. Cooper Tire & Rubber Co.*, 396 F.3d 650, 652 n.1 (5th Cir. 2005).

### III.  DISCUSSION AND ANALYSIS

Sachse's Motion is based on three arguments: that KCS's Notice of Removal was untimely, that the state court action was not yet a "civil action" that could be removed under 28 U.S.C. § 1441, and that this court does not have jurisdiction over the subject matter. (Pl.'s Mot. 2.) While the first two arguments fail, the court finds that jurisdiction is lacking, and this case must be remanded.

#### A.  KCS's Removal Was Timely

Sachse argues that the Notice of Removal was untimely because it was filed almost two months after KCS was "advised...through its corporate counsel" that the eminent domain action had been filed. (Pl.'s Mot. 3.) Thus, Sachse argues that KCS was in receipt of the complaint "through service or otherwise" for more than thirty days before filing its Notice of Removal. 28 U.S.C. § 1446(b) (2006). To this day, KCS has not been served with process. The thirty day period to remove a case from state court does not begin to run until after "simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 348 (1999). KCS, therefore, filed its Notice of Removal in a timely fashion.

#### B.  The Removed Matter is a "Civil Action"

Sachse's next argument is that the eminent domain proceeding in the state court was an administrative proceeding that had not yet blossomed into a "civil action brought in a State court."

28 U.S.C. § 1441(a) (2006). In Texas, takings by eminent domain entail a two step process, consisting of an administrative phase, and, if necessary, a judicial proceeding. *Amason v. Natural Gas Pipeline Co.*, 682 S.W.2d 240, 242 (Tex. 1984). If the condemnor and condemnee are unable to agree to a price to be paid for a public use taking, the condemnor is to file a petition, depending upon the circumstances, in either a county court at law or state district court. TEX. PROP. CODE ANN. §§ 21.012-21.013 (Vernon 2006). The court then appoints "three disinterested freeholders who reside in the county" to assess the price to be paid to the condemnee. TEX. PROP. CODE ANN. § 21.014(a) (Vernon 2006). If any party to the condemnation proceeding objects to the freeholders' award, it may file an objection with the court, and the matter proceeds as a typical civil action. TEX. PROP. CODE ANN. § 21.018 (Vernon 2006).

KCS removed this matter before the freeholders made a determination as to the value of the property proposed to be condemned. Sachse argues, therefore, that this matter is purely administrative at this stage, rendering the cause not to be a "civil action" within the meaning of the removal statute. To be certain, the authority of the freeholders under the statute is limited to the determination of the compensation to be paid to the condemnee. *Amason*, 682 S.W.2d at 242. There is authority for the proposition that similar proceedings are not judicial in nature and thus fall outside the scope of the removal statute. *Chicago, Rock Island & Pac. R.R. Co. v. Stude*, 346 U.S. 574, 578-79 (1954) (stating that when the jurisdiction of the state district court is invoked, an eminent domain action *becomes* civil in nature); *Boom Co. v. Patterson*, 98 U.S. 403, 406-07 (1879) (stating that the task of commissioners appointed to appraise the value of condemned land was "not a suit at law in the ordinary sense of those terms"); *City of Thibodaux v. La. Power & Light Co.*, 255 F.2d 774, 776 (5th Cir. 1958) (stating that state condemnation proceedings may not be removable civil actions at

all stages); *Village of Walthill v. Iowa Elec. Light & Power Co.*, 228 F.2d 647 (8th Cir. 1956) (holding that a case is not removable until the state district court's jurisdiction is invoked by the appeal of the condemnation award).

Appealing as the logic of those cases may be in both the context of the decisions and in the instant context, each is distinguishable from controlling authority to the contrary. In *Madisonville Traction Company v. Saint Bernard Mining Company*, the Supreme Court passed on whether a virtually identical eminent domain proceeding was removable prior to reaching the judicial phase in the state district court. *Madisonville Traction Co. v. Saint Bernard Mining Co.*, 196 U.S. 239 (1905). The State of Kentucky used a similar two stage process involving the appointment of special commissioners to assess the value of the condemned property followed by an appeal to the state district court upon the objection of a party. *Id*. at 241-42. If objections were filed, the state district court would try the case to a jury. *Id*. at 242. The Court held the matter to be removable prior to the filing of objections by the condemnee and, thus, prior to the invocation of the general jurisdiction of the state district court. *Id*. at 246.

Though, at the stage it reached this court, the proceeding in the Texas state court lacked many of the vital indicia of the judicial process, and though it has been held to be purely administrative, the court is compelled to apply the strained logic of *Madisonville Traction*. *Stude* and *Walthill* involved factually distinct eminent domain procedures. The eminent domain proceeding discussed in *Stude* was initiated with the sheriff of the county in which the application to condemn was made. *Stude*, 346 U.S. at 575. The proceedings in *Walthill* were commenced by a popular election. *Walthill*, 228 F.2d at 648. Finally, the above-referenced dicta in *Boom Company* and *Thibodaux* did not prevent either court from holding those actions, which were initiated in regularly-constituted

courts, to be removable. Though the functions of the appraisers appointed by the state district court in the instant action are materially inseparable from those of the appraisers appointed by other means in *Stude* and *Walthill*, this court is "[m]indful of [its] position in the hierarchy of the federal judiciary," *Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1316 (9th Cir. 1995) (Kozinski, J.), and it is bound to adhere to the controlling authority that implicitly found the distinctions to be noteworthy. The state court proceeding, even at its administrative stage, is a "civil action brought in a State court." 28 U.S.C. § 1441(a) (2006); *Madisonville Traction Co.*, 196 U.S. at 246.

## C. The Court Does Not Have Jurisdiction Over the Subject Matter

Though Sachse has not pleaded a federal claim, KCS argues that the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), 49 U.S.C. § 10101, *et. seq.*, preempts Sachse's state law claim, creating federal question jurisdiction. (Def.'s Resp. 7-9.) When a state law claim is wholly displaced by preemptive federal law, the state law claim is said to be converted into a claim based on federal law. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). This rare exception applies in this Circuit when the authorities indicate that Congress intended the federal regulations to "provide[] the exclusive cause of action." *PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

Section 10501 of the ICCTA is the Congressional expression of the jurisdiction of the Surface Transportation Board ("STB"), which the ICCTA created to regulate rail transportation. That section provides the Board with exclusive jurisdiction over

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located,

or intended to be located, entirely in one State

49 U.S.C. § 10501(b) (2006). The statute goes on to state that "the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *Id*. Despite this broad expression of policy, the courts and the STB have not found it to categorically preempt state condemnation proceedings. *Lincoln Lumber Co.*, 2007 WL 2299735 (S.T.B.), at *2 (Aug. 13, 2007). Where, as here, the power of eminent domain is invoked to construct a mundane structure such as a railroad grade crossing, the ICCTA completely preempts state law if the project would "impede rail operations or pose undue safety risks." *Maumee & W. R.R. Co.*, 2004 WL 395835 (S.T.B.), at *2 (Mar. 3, 2004); *District of Columbia v. 109,205.5 Square Feet of Land*, 2005 WL 975475, No. Civ.A. 05-202 (RMU), at *3 (D. D.C. Apr. 21, 2005).

In a different context, the Fifth Circuit Court of Appeals has found that the ICCTA does completely preempt state law. *PCI Transp. Inc.*, 418 F.3d at 545. Although the parties have submitted expert declarations concerning the safety of various designs for this railroad crossing, neither side has addressed the design documents attached to the state court petition.

KCS submitted the Declaration of Joseph Masterson, an engineer stating that he found that low clearance vehicles would get stuck on the railroad tracks. (Def.'s Resp. Masterson Dec. 2.) Masterson's Declaration is based upon a design dated February 23, 2007. (*Id*. at Ex. B.) The tracks at the crossing proposed by that design are elevated such that the extension of Woodbridge Parkway would require a very steep incline in order for the proposed road to rise to the elevation of the railroad tracks. Sachse has not disputed this contention, yet it contends that the crossing design is safe nonetheless.

Sachse responded to Masterson by submitting the Declaration of Ashley Frysinger, also an

engineer, claiming that an "Adjusted Design," dated August 1, 2007, meets KCS and Texas Department of Transportation criteria. (Pl.'s Reply Frysinger Dec. 2.) Presumably, the Adjusted Design would eliminate the issues with low-clearance vehicles.

However, the most recent (and only) design before the state court, and therefore, before this court on KCS's Notice of Removal, is dated September 15, 2006. Neither party has addressed that design even though it is the design properly before this court. Therefore, the court has no evidence before it regarding the safety risks posed by the railroad crossing design of record. The existence of subject matter jurisdiction is determined at the time of removal. *In re Bissonnet Inv., L.L.C.*, 320 F.3d 520, 525 (5th Cir. 2003). The designs upon which the parties's experts opine are irrelevant to the jurisdiction analysis in this case as subject matter jurisdiction must be based on the facts surrounding the railroad crossing design on record at the time of removal. Without the aide of commentary on the risks presented by the design that is properly before the court, the court has no basis to find that it would "impede rail operations or pose undue safety risks" *Maumee*, 2004 WL 395835, at *2. Therefore, the ICCTA does not preempt this mater, and jurisdiction is lacking under Section 1331.

KCS also alleges that the court has jurisdiction over the subject matter of this case under Section 1332. The parties are citizens of different states, and KCS argues that the amount in controversy in this matter is in excess of $75,000. Sachse argues that the amount in controversy is $17,100 on the basis of an appraisal of the land conducted by a state-certified appraisal firm.

Diversity jurisdiction exists where there is complete diversity of citizenship between the parties and the amount in controversy in the matter exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332 (2006). Because the state court petition does not allege an amount in controversy,

it is the removing defendant's burden to establish by a preponderance of the evidence that the requisite jurisdictional amount is in play. *Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 773 (5th Cir. 2003). There are two ways to make this showing: "(1) by demonstrating that it is facially apparent that the claims are likely above $ 75,000, or (2) by setting forth the facts in controversy--preferably in the removal petition, but sometimes by affidavit--that support a finding of the requisite amount." *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999); *Felton*, 324 F.3d at 773-74. Finally, "conclusory allegations" regarding the amount in controversy will not suffice to establish its existence. *Id*. at 774 (quoting *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).

As stated above, Sachse submits that the amount in controversy is $17,100, and its estimate is based on the opinion of a state-certified appraisal firm. On the other hand, "KCS will consider" this lawsuit to be worth in excess of $75,000 "because KCS potentially could incur or face claims for property damage or injuries that may far exceed that amount." (Def.'s Resp. Ebeling Dec. 2.) The Ebeling Declaration's flaws defeat KCS's amount in controversy argument. The Declaration bases KCS's valuation of this matter on hypothetical future tort claims that may be based on incidents that occur near the railroad crossing. These incidents, which may or may not ever occur, are far divorced from this controversy, which centers on the compensation to be paid for the condemnation of KCS's property. The Ebeling Declaration makes nothing more than a conclusory statement based on untenable suppositions, making it inappropriate as a basis for any finding that the amount in controversy requirement has been satisfied. *Felton*, 324 F.3d at 773-74. Likewise, the appraisal submitted by Sachse, in the absence of any credible and contrary evidence, prevents any finding that "it is 'facially apparent' that the claims probably exceed $75,000." *Id*. at 773.

Therefore, the court lacks diversity jurisdiction under Section 1332.

## IV. CONCLUSION

Based on the foregoing, the court finds that KCS timely filed its Notice of Removal. The court further finds that the matter was a "civil action" under Section 1441 in the stage that it was removed to this court. The court further finds that the doctrine of complete preemption does not apply and that the court lacks federal question jurisdiction. The court further finds that the amount in controversy in this lawsuit is below the required $75,000. Thus, the court lacks subject matter jurisdiction under both Section 1331 and Section 1332. The court is therefore of the opinion that the City of Sachse's Motion to Remand should be, and hereby is, GRANTED. This lawsuit is hereby REMANDED to the County Court at Law No.2 of Collin County, Texas.

IT IS SO ORDERED.

**SIGNED this the 19th day of March, 2008.**

_Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE